IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ELENA CORONADO,<br> Plaintiff. | §<br>§<br>§ |
| VS. | § ACTION NO. 4:10-CV-00943-Y<br>§ |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br> Defendant. | §<br>§<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

The plaintiff, Elena Coronado ("Coronado") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). In May 2008, Coronado applied for DIB and SSI benefits, alleging a

1

disability onset date of April 10, 2004.[1] (Transcript ("Tr.") 12, 14, 110-16, 123.) After her applications were denied initially and on reconsideration, Coronado timely requested a hearing before an administrative law judge ("ALJ"). (Tr. 12.) A hearing was held in Fort Worth, Texas before ALJ William H. Helsper on March 3, 2010. (Tr. 12, 28-42.) On March 25, 2010, the ALJ issued a decision holding that Coronado was not disabled based on the finding that she had a residual functioning capacity ("RFC") to perform sedentary work with skills from past relevant work that were transferable to other occupations. (Tr. 12-22.) On November 5, 2010, the Appeals Council denied Coronado's request for review of the ALJ's unfavorable decision. (Tr. 1-6.) Subsequently, Coronado filed the instant action in federal court.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "the law and regulation governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 152, 154 (5th Cir. 1999).

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d

---

[1] Coronado had a prior application for benefits that was denied effective April 24, 2008. (Tr.14.) The Appeals Council, on November 19, 2009, denied Coronado's appeal. (*Id.*) The ALJ, in the present case, found that the earlier April 24, 2008 ALJ was *res judicata*, and dismissed Coronado's request for a hearing through April 24, 2008. Thus, Coronado's alleged onset date effectively became April 25, 2008. *Id.*

2

152, 154 (5th Cir.1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972.

Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). Past relevant work is defined as work performed, within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do the job. 20 C.F.R. § 404.1560(b). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show that he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of

performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198; *see also Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). If the Commissioner meets this burden, the claimant must then prove that he cannot, in fact, perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). The Court must, however, carefully scrutinize the record to determine if the evidence is present.

### III. ISSUES

Coronado presents the following issues:

1. Whether the ALJ's determination that Coronado had transferrable skills from past relevant work was supported by substantial evidence.

2. Whether the ALJ's determination at step five that Coronado could perform other work that existed in significant numbers was erroneous.

(Plaintiff's Brief ("Pl.'s Br.") at 1.)

A. **Administrative Record**

At the hearing before the ALJ, Shelly Eike, a vocational expert ("VE"), described Coronado's past relevant work as: (1) a shipping and receiving clerk, medium skilled with a specific vocational preparation ("SVP")[2] of 5; (2) a stocker, medium unskilled with an SVP of 2; and (3) an electrical accessory assembler, light semi-skilled with an SVP of 3. (Tr. 40-41.) The ALJ then asked the VE if a person of Coronado's age with the residual functional capacity ("RFC") to perform sedentary work "with the freedom to occasionally change positions at the worksite from sitting to standing" could perform any of Coronado's past jobs. (Tr.41.) The VE responded no. *Id.* The ALJ next asked the VE whether Coronado had obtained any assembly or shipping and receiving skills from her past relevant work that were transferable to other work. *Id.* The VE stated:

> The electrical assembly skills, in terms of following diagrams and assembling according to those diagrams, would transfer to such work as the semi-conductor assembler. That is defined as sedentary, with an SVP: 3, and, I believe, it would allow for occasional opportunities to change position . . . Nationally, I would estimate approximately 10,000 such jobs. In the Texas economy, I would estimate approximately 500.

*Id.*

Coronado also testified on her own behalf at the hearing, explaining that she last worked for a company named "Bombay" in shipping and receiving but had to stop working in 2004 due to an unspecified lower back injury. (Tr. 31.) Describing her daily activities, she told the ALJ that she does part of her housework, prepares her own meals, watches TV, and reads, but does

---

[2] SVP level refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See Dictionary of Occupational Titles*, app. C (rev. 4th ed. 1991). Unskilled work usually requires less than thirty days training, which corresponds to an SVP of 1 or 2; semi-skilled work corresponds to an SVP of 3 or 4; and skilled work requires an SVP level of 5 or higher. Social Security Ruling 00-4p. *See also generally* 20 C.F.R. §§ 404.1568, 416.968.

5

not operate a motor vehicle. (Tr. 31-32, 34-35.) She also stated that when she does her grocery shopping so she goes with others and rides "on that cart thing." *Id.* She also testified that she suffers from depression, which she treats with medication along with her pain medication, she is able to stand for approximately one hour before needing to sit down, and she is able to sit for twenty minutes before she needs to stand up again. (Tr. 37-39.)

On an undated "Work History Report" Coronado listed her previous job as "chopping cotton on field," "50% off Store Dept.," "Fiesta food store," Walmart, Uvelco, "work with plant," and Bombay. (Tr. 133.) Coronado described her work at Uvelco as "work[ing] with wire [b]uilding transformer for heart machine." (Tr. 138.) Peggy Martin ("Martin"), a disability determination service employee, completed a "Sequential Vocational Guide" on July 16, 2008, which listed Coronado's past relevant work as a transformer assembler, shipping and receiving clerk, and a stocker. (Tr. 152.) Finally, a "Disability Report-Adult" form lists Coronado's work history as follows: assembler/transformer at manufacturing plant from January 1996 to June 1997, restocker at "Fiesta/grocery store" from July 1991 to July 1992, shipping and receiving clerk at a department store from November 1999 to April 2004, and an employee at Walmart from January 1998 to September 1998. (Tr. 128.)

### B. **The ALJ's Decision**

In making his decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 12-23.) At step one, the ALJ found that Coronado met the disability insured status requirements of the SSA through June 30, 2010. (Tr. 14.) He also found that she had not engaged in substantial gainful activity since April 25, 2008, her alleged onset date. *Id.*

At step two, the ALJ determined that Coronado had a severe back impairment. *Id.* The ALJ continued to step three, finding that Coronado did not have an impairment or combination of impairments that met or medically equaled a listing in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr.15.) Before considering step four, the ALJ found that Coronado had an RFC to perform sedentary work, as defined in 20 C.F.R §§ 404.1567(a) 416.967(a), except that she required a sit/stand option. (Tr. 15.) At step four, the ALJ determined that Coronado was unable to perform any of her past relevant work. (Tr. 22.)

Next, the ALJ found, based on the VE's testimony, that Coronado had past relevant work as an "electrical accessory assembler," which was semi-skilled with an SVP of 3 and required the skill of "following diagrams," and that Coronado had acquired work skills from such past relevant work. (Tr. 22; *see* Tr. 41.) At step five the ALJ found, given Coronado's age, education, work experience, RFC, and acquired work skills, that there were jobs Coronado could perform existing in significant numbers in the national economy. (Tr. 22.) This finding was based on the VE's testimony that Coronado's past work as an electrical assembler had the transferable skills of following diagrams and assembling according to those diagrams, which was transferable to work such as a "semi-conductor assembler." (Tr. 41.) In addition, the ALJ relied on the VE's testimony that there were approximately 10,000 such jobs available nationally and 500 available in Texas. *Id.* Ultimately, the ALJ concluded that Coronado was not disabled within the meaning of the Act at any time from her alleged date of onset through the date of the decision. (Tr. 23.)

## IV. DISCUSSION

A. **Whether the ALJ's determination that Coronado had transferable skills from past relevant work was supported by substantial evidence**

Coronado asserts that the ALJ's decision must be reversed because his finding that Coronado acquired transferable skills from past relevant work was erroneous and not based upon substantial evidence. (Plaintiff's Brief (Pl.'s Br.) at 8.) First, Coronado contends that the ALJ mischaracterized her past relevant work. *Id.* Coronado claims that the ALJ's reliance on the VE's testimony that she worked as an "electrical accessory assembler" is unsupported by the administrative record and that, in fact, she worked as a transformer assembler. (Pl.'s Br. 11.) Also, Coronado contends that because the job description for "Assembler, Electrical Accessories II" in the Dictionary of Occupational Titles[3] ("DOT") does not mention "assembling transformers for heart machines" there was not substantial evidence to support a finding that she had worked as an electrical accessory assembler. See DOT § 729.384-010 (rev. 4th ed. 1991). The Commissioner, on the other hand, claims that the characterization of Coronado's past relevant work as an assembler of electrical equipment by the VE and the ALJ is consistent with the position of transformer assembler as reported in the administrative record, DOT codes, and Coronado's testimony at the ALJ hearing. (Defendant's Brief ("Def.'s Br.") at 6-7.)

When determining whether a claimant could adjust to alternate work that is within her RFC and that exists in significant numbers in the national economy, the ALJ may consult several sources, including the DOT and/or a VE. 20 C.F.R. § 404.1566(a), (d), (e). The term past relevant work means work that is performed within the last 15 years prior to the date of the

---

[3] The Department of Labor promulgated the DOT to "standardize occupational information to support job placement activities." *DOT*, at xv. Thousands of jobs are classified within the DOT based on a number of factors, such as the amount of time required for a typical worker to learn the techniques, information, and facility required for average performance of a specific job. *Dikeman v. Halter*, 245 F.3d 1182, 1186 n.2 (10th Cir. 2001).

alleged disability. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), & 416.965. In addition, the work must have lasted long enough for the claimant to learn to do the job, and it must have been substantial gainful activity ("SGA"). *Id.*

In determining that Coronado had acquired work skills from past relevant work, the ALJ relied on the VE's testimony that Coronado had past relevant work as an "electrical accessory assembler," which the VE described as light, semi-skilled work with an SVP code of 3 and requiring the skill of following diagrams. (Tr. 22.) The only testimony Coronado provided concerning her past employment was that she was last employed in 2004 for a company named Bombay and that she worked in shipping and receiving. (Tr. 41.) Furthermore, in her brief, Coronado contends that she did, in fact, work as an assembler for "Uvelco" from 1996-1997 but not as an electrical assembler. (Pl.'s Br. At 11.) The administrative record contains a "Disability Report-Adult" which identifies Coronado as an "assembler/transformer" from 1996 to 1997 (Tr. 128), and a "Work History Report" that Coronado completed where she describes her work at Uvelco as "work with wire building transformer for heart machine." (Tr. 138.) Finally, the "Sequential Vocational Guide" completed by Martin lists Coronado's past relevant work as transformer assembler, shipping and receiving clerk, and stocker. (Tr. 152.)

While the VE failed to provide any reference to any DOT codes to the jobs she discussed in her testimony at the hearing, a review of the DOT indicates that it lists two jobs with a title and description similar to that of an "electrical accessory assembler." *See* DOT §§ 729.384-010, 729.687-010. The first, "Assembler, Electrical Accessories I" ("Assembler I") has an SVP of 2, has a strength rating of light, and is described as assembling mechanical parts of electrical equipment. DOT § 729.687-010. The second, "Assembler, Electrical Accessories II"

("Assembler II"), has an SVP of 3, has a strength rating of light, and is described as assembling electrical instruments such as ammeters, galvanometers, and voltmeters. DOT § 729.384-010.

Coronado, on the other hand, maintains that she never worked as an electrical accessory assembler but that she did work as a "transformer assembler." (Pl.'s Br. 11.) The DOT lists two jobs with the title of transformer assembler. *See* DOT §§ 820.381-014, 820.684-010. The first, "Transformer Assembler I," has an SVP of 6, a strength rating of medium, and is described as connecting coils to terminals and building up "supporting structure of power transformers, according to wiring and structural diagrams." DOT § 820.381-014. The second, "Transformer Assembler II," has an SVP of 3, a strength rating of heavy, and is described as "assembl[ing] transformers according to specifications." DOT § 820.684-010.

While the Commissioner does not address any of these above-referenced DOT sections, he argues that Coronado's own statement that she assembled transformers for heart machines demonstrates that she assembled electrical equipment. (Def.'s Br. At 7.) The Commissioner relies on DOT § 826.361-010, which lists the job title as "Assembler and Wirer, Industrial Equipment." This job has an SVP of 6, has a strength rating of medium, and is described as "installs electrical wiring and assembles components in control cabinets, electrical and industrial equipment, and related industrial apparatus, according to blue prints and wiring diagrams." (Def.'s Br. 7 (citing DOT § 826.361-010).) The Commissioner contends that the transformer assembler position is also referred to as an assembler of electrical equipment, that building heart machines is assembling electrical equipment, and that Coronado did acquire the skill of following diagrams. (Def.'s Br. 7.)

Based upon a review of the relevant provisions, the parties' arguments, and the administrative record, the Court finds that there is substantial evidence to support the ALJ's reliance on the VE's testimony in finding that Coronado had past relevant work as an electrical accessory assembler. In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices support the decision. *Boyd v. Apfel*, 239 F.3f 698, 704 (5th Cir. 1995). In this case, the ALJ relied on the VE's testimony that Coronado worked in the past as an electrical accessory assembler doing light work with an SVP of 3. (Tr. 41.) The VE is not, *per se*, required to identify the specific DOT numbers to alleviate any potential inconsistencies. *Haas v. Barnhart*, 91 F.App'x 942, 948 (5th Cir. 2004) ("[The claimant] cites no support for his claim that the DOT numbers for positions identified by the VE must be given."), *Nichols v. Astrue*, No. 5:09-CV-18-DCB-JMR, 2010 WL 5690390, at *12 (S.D. Miss. Apr. 20, 2010) ("Plaintiff does not cite any support for his claim that the DOT numbers for positions identified by the VE must be given."), *adopted in* Nichols v. Astrue, 5:09-CV-18-DCB-JMR, 2011 WL 359141 (S.D. Miss. Feb. 1, 2011). The VE's testimony is consistent with DOT § 729.384-010, which has a job title of "Assembler, Electrical Accessories I," and is also classified as light work with an SVP of 3 and describes the work as assembling electrical instruments with the alternative title of assembler. (Tr. 40-41, DOT § 729.384-010.) Furthermore, even Coronado agrees that she was an "assembler" and worked with wire to build a transformer for a heart machine. (Pl.'s Br. at 9-11; *see* Tr. 138.) Because there does not appear to be a significant difference between the DOT descriptions of an electrical accessory assembler, a transformer assembler, and Coronado's description of her work, substantive evidence supports the ALJ's decision that Coronado had past relevant work as an electrical accessory assembler. Consequently, remand is not required.

Coronado's next argument is that, even assuming she did work as an electrical accessory assembler, it was not reasonable for the ALJ to conclude that she learned the transferable skill of "following diagrams" from that work. Specifically, Coronado claims that such a conclusion is unreasonable because her earnings for the years when she worked as an assembler were below the federally defined poverty level. (Pl.'s Brief at 13.)

The ALJ, relying on the VE's testimony, found that Coronado had acquired the skill of "following diagrams" from her past relevant work, which was transferable to other occupations. (Tr. 22-23.) The VE testified as follows: "The electrical assembly skills, in terms of following diagrams and assembling according to those diagrams, would transfer to work such as the semi-conductor assembler. That is defined as sedentary, with an SVP of 3." (Tr. 41.)

For past skills to be transferable to other occupations, the skills must have been "demonstrated in vocationally relevant past jobs." Social Security Ruling ("SSR") 82-41, 1982 WL 31389, at *2 (S.S.A. 1982). Past relevant work is defined as substantial gainful activity that a claimant has done within the past fifteen years and that lasted long enough for the claimant "to learn to do it." 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1); see 20 C.F.R. §§ 404.1565, 416.965. Finally, substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. The regulations provide that employment earnings will ordinarily be evidence that a claimant engaged in substantial gainful activity if they averaged more than the stipulated monthly amount for the relevant year(s). 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). According to Table 1 in 20 C.F.R. § 404.1574(b), if a claimant averaged more than $500/month (or $6,000/year), in calendar years 1996-1997, his earnings are considered gainful activity. *Id.*

In this case, Coronado worked as an "electrical accessory assembler" from 1996 to 1997 (Pl.'s Br. at 13, Tr. 119), which is within the past fifteen years. Furthermore, the VE testified that Coronado's work as an electrical accessory assembler had an SVP of 3, which requires over one month up to and including three months to learn to perform (*See* Tr. 41; DOT app. C; DOT § 729.384-010.) Coronado admittedly worked as an assembler for 2 years; thus, she worked as an electrical accessory assembler for long enough to learn the skills. (Tr. 119, Pl.'s Br. at 13). In addition, Coronado's earnings record shows she earned $8,232.20 in 1996 and $8,126.38 in 1997 (Tr. 119.) Thus, in both 1996 and 1997, Coronado earned above the regulatory minimum to establish that she engaged in substantial gainful activity. Therefore, based on the information in the administrative record and the VE's testimony, it is clear that the ALJ's finding that Coronado had the transferable skill of following diagrams is supported by substantial evidence.

Next, Coronado argues that the ALJ erred in relying on the VE's testimony regarding her transferable skills because "following diagrams" is not a skill. Skill is defined as:

> knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation which is above unskilled level (requires more than 30 days to learn). It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner. This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery. A skill gives a person a special advantage over unskilled workers in the labor market.

SSR 82-41, 1982 WL 31389, at *2. Coronado asserts that following diagrams is not a skill under this definition. (Pl.'s Br. at 14.)

However, as both Coronado and the Commissioner acknowledge, following diagrams is analogous to reading blueprints, which is an example specifically included in the definition of skill. *See* SSR 82-41, 1982 WL 31389, at *2. Furthermore, Coronado indicated that she built

13

transformers for heart machines (Tr. 133), which is also analogous to setting up machinery. Having such knowledge would certainly give an employee an advantage over unskilled laborers. Also, the Fifth Circuit has recognized that "the value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Vaughn v. Shalala*, 58 F.3d 129, 132 ( 5th Cir. 1995). The VE's uncontradicted testimony provides substantial evidence for the ALJ to rely on that Coronado learned the skill of following diagrams from her work as an electrical accessory assembler and that the skill was transferable to work as a semi-conductor assembler.

The Court notes that Coronado also argues that she could not have developed a transferable skill because "if it had taken her longer than 30-days and up to 3-months to learn how to 'follow diagrams' then she would have been paid more than minimum wage." (Pl.'s Br. at 14.) However a review of the relevant authority provides no basis for requiring a connection between learning a skill and earnings, and it has already been established that Coronado had sufficient earnings for the work to be considered substantial gainful activity.

Coronado also contends that following diagrams is not a transferable skill because it does not relate to specific work activities and the term is generic. (Pl.'s Br. at 14-15.) In support of this argument, Coronado relies on *Jeffcoat v. Secretary of Health and Human Services*, which held that "skills must be acquired and must relate to specific work activities." 910 F. Supp. 1187, 1194 (E.D. Tex. 1995). However, Coronado's reliance on this case is misguided because the claimant in *Jeffcoat* provided uncontradicted evidence that the work he actually performed in his past relevant employment was different from that of the national average for the position and

14

the VE testified that the claimant's job duties, as he described them, would not have resulted in the same transferable skills. *Id.* Substantial evidence supports the ALJ's determination regarding claimant's transferable skills.

### B. **Whether the ALJ's step five determination that Coronado could perform other work that existed in significant numbers was erroneous.**

Coronado also argues that the ALJ's finding at step five that she could perform other work that existed in the national economy was erroneous because 500 jobs in the state of Texas does not constitute a significant number to support such a finding. (Pl.'s Br. at 15.) The ALJ relied on the VE's testimony that, although Coronado could not perform any of her past jobs, considering her RFC and her skill of following diagrams, she could "transfer to work such as the semi-conductor assembler." (Tr. at 41.) The ALJ also relied on the VE's statement that, "Nationally, I would estimate approximately 10,000 such jobs. In the Texas economy, I would estimate approximately 500." (Tr. at 41.)

To be considered disabled, a claimant must have a severe impairment that makes him unable to perform his previous work or any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505(a), 416.905(a). The SSA provides:

> An individual shall be determined to be under disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. "Work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the county.

15

42 U.S.C. § 423(d)(2)(A). The Social Security regulations provide that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside the region where you live are not considered 'work which exists in the national economy'." 20 C.F.R. § 404.1566(b); *see* 20 C.F.R. § 416.966(b). There is no further guidance from the statute or regulations for determining when work exists in the national economy. Furthermore, the Fifth Circuit has offered no test or "magic number" for determining when the number of jobs available is significant to support a finding at step five that a claimant is not disabled. *Mercile v. Sec'y of Health and Human Servs.*, 892 F. Supp. 843, 847 (E.D. Tex. 1995); *see also Mercer v. Halter*, No. 4:00-CV-1257-BE, 2001 WL 257843, at * 6 (N.D. Tex. Mar. 7, 2001).

Other courts have considered various flexible factors when analyzing this issue. For example, the Sixth Circuit Court of Appeals indicated that a judge should consider the level of the claimant's disability, the reliability of the vocational expert's testimony, the reliability of the claimant's testimony, the distance the claimant is capable of traveling for work, and the isolated nature of the work, and the types and availability of such work. *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Both the Sixth and Eight Circuits have concluded that ultimately the decision should be left to the trial judge's "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id*; *see Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1998); *see also Mericle v. Shalala*, 892 F. Supp. 843, 847 (E.D. Tex. 1995). "But in terms of raw numbers, there appears to be a wide disparity among the courts as to what satisfies the requirement." *Gaspard v. Comm'r of Soc. Sec. Admin.*, 609 F. Supp. 2d 607, 619 (E.D. Tex 2009). For example, the court in *Mercer* found that, given the claimant's particular circumstance, 500 jobs in Texas and 5,000 such jobs available nationwide constituted a

significant number. 2001 WL 257842, at *5-6. *See also Jenkins*, 861 F.2d at 1087 (finding 500 jobs existing in the region was a significant number). Whereas, the court in *Mericle* concluded that 870 jobs in Texas was not a significant number when the claimant relied on his parents for physical and mental care, he could not travel to obtain work, and the VE's testimony was unreliable. *Mericle*, 892 F. Supp. at 847; *see also Walker v. Shalala*, No. H-93-2507, 1994 WL 171209, at * (S.D. Tex. Jan. 6, 1994) (finding that 1800 jobs in Texas was not a significant number); *Waters v. Sec'y of Health and Human Servs.*, 827 F. Supp. 446, 450 (W.D. Mich. 1992) (finding that 1,000 jobs in the entire state of Michigan was insufficient); *Leonard v. Heckler*, 582 F. Supp. 389, 391 (M.D. Pa. 1983) (finding that 4,000 to 5,000 jobs in the entire nation was not sufficient.)

In this case, the ALJ's decision reflects that he considered the VE's testimony, Coronado's testimony, credibility, RFC, age, education, capabilities, and transferable work skills to ultimately determine that she was not disabled because a significant number of jobs existed in Texas and the national economy that she could perform. (Tr. 22-23.) Based on the particular circumstances of this case, there is substantial evidence to support the ALJ's finding that 500 jobs is a sufficiently significant number to constitute work that exists in the national economy. In this case, there is no indication that the VE's testimony is unreliable and there is evidence that Coronado's testimony was minimally credible because it conflicted with objective medical evidence in the record. (Tr. 22; *see* Tr. 17.) Furthermore, unlike the claimant in *Mericle*, Coronado cares for herself and is not psychological deficient, although she does suffer from depression. (Tr.16-22); *See Mericle*, 892 F. Supp. 843 at 847. Because there is substantial evidence to support the ALJ's determination that a sufficient number of jobs exist in the national and local economy that Coronado can perform, remand is not required.

## V. RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **December 15, 2011** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 1, 2011.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/tt